IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BRIDGET G. COLLINS                                    PLAINTIFF

vs.                          Civil No. 3:16-cv-03073-BAB

NANCY A. BERRYHILL                            DEFENDANT
Acting Commissioner, Social Security Administration[1]

**MEMORANDUM OPINION**

      Bridget Collins ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("The Act").

      The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 6).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**       **Background:**

      Plaintiff protectively filed her disability application for SSI on April 19, 2013. (ECF No. 10, p. 16). In her application, Plaintiff alleges being disabled due to back injury, knee misalignment,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

arthritis, anxiety and panic attacks, depression, racing heart, sleep apnea, falling asleep while driving, digestive problems, acid reflux, swollen ankles and legs, and degenerative disc disease. (ECF No. 10, p. 199). Plaintiff alleges an onset date of December 1, 2012. (ECF No. 10, pp. 16, 195). This application was denied initially and again upon reconsideration. (ECF No. 10, pp. 65-97).

Thereafter, Plaintiff requested an administrative hearing on her denied application, and this hearing request was granted. (ECF No. 10, pp.113-15). Plaintiff's administrative hearing was held on August 27, 2014, in Harrison, Arkansas. (ECF No. 10, pp. 32-64). Plaintiff was present at this hearing and was represented by Evelyn Brooks. *Id.* Plaintiff and Vocational Expert ("VE") Sarah Moore testified at this hearing. *Id.* At the time of this hearing, Plaintiff was thirty-eight (38) years old, which is defined as a "younger person" under 20 C.F.R. § 416.963(c). (ECF No. 10, p. 36). As for her level of education, Plaintiff has Associate's degrees in the fields of accounting, business management, and business administration. (ECF No. 10, pp. 36-37).

After this hearing, on January 6, 2015, the ALJ entered an unfavorable decision denying Plaintiff's application for SSI. (ECF No. 10, pp. 13-27). In this decision, the ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since April 19, 2013, her application date. (ECF No. 10, p. 18, Finding 1). The ALJ determined Plaintiff had the following severe impairments:

> Musculoskeletal Disorders (Back Disorder, lumbar degenerative disc disease) (7240) and (Osteoarthritis and Allied Disorders, bilateral knees, left patella chondromalacia) (7150/7160); Special/Other Disorders (Obesity) (2780); Cardiovascular Disorders (Cardiac Dysrhythmias, palpitations) (4270) and (Hypertension) (4010); Respiratory Disorders (Asthma with recurrent bronchitis) (4910); and Mental Disorders (Mood/Affective Disorders, major depressive disorder, generalized anxiety disorder, panic disorder) (2960/3000).

(ECF No. 10, pp. 18-19, Finding 2). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix

2

1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 19-21, Finding 3).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10, pp. 21-25, Finding 4). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform:

> sedentary work as defined in 20 C.F.R. § 416.967(a) except as follows: [Plaintiff] cannot climb, kneel, crouch, or crawl. [Plaintiff] can occasionally balance and stoop. [Plaintiff] must avoid all concentrated exposure to temperature extremes and humidity. [Plaintiff] must avoid even moderate exposure to fumes, odors, dusts, gasses, and poor ventilation. [Plaintiff] must avoid even moderate exposure to workplace hazards and cannot drive as part of work. [Plaintiff] is able to perform work where interpersonal contact is routine but superficial, where the complexity of tasks is learned by experience, with several variables and use of judgment within limits, and where the supervision required is little for routine tasks but detailed for non-routine tasks.

*Id.* at 25.

The ALJ then determined Plaintiff had no Past Relevant Work ("PRW"). (ECF No. 10, p, 26, Finding 5). The VE testified at the administrative hearing regarding this issue. (ECF No. 10, pp. 58-63). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a clerk, which has a DOT code of 249.587-018, with approximately sixty thousand eight hundred (60,800) jobs in the national economy, and approximately four hundred fifty-seven (457) jobs in the regional economy, as an assembler, which has a DOT code of 726.684-110, with approximately nineteen thousand seven hundred (19,700) jobs in the national economy, and approximately two hundred seventeen (217) jobs in the regional economy, and as a machine tender, which has a DOT code of 713.684-038, with approximately fifteen thousand one hundred (15,100) jobs in the national

economy, and approximately one hundred seventy-five (175) jobs in the regional economy. (ECF No. 10, pp. 26-27, Finding 9). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from April 19, 2013, through January 6, 2015, the date of the ALJ's decision. (ECF No. 10, p. 27, Finding 10).

Thereafter, on March 8, 2015, Plaintiff requested a review by the Appeals Council. (ECF No. 10, p. 9). The Appeals Council denied this request on April 20, 2016. (ECF No. 10, pp. 5-8). On June 17, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on July 7, 2016. (ECF No. 6). This case is now ready for decision.

**2.    Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065,

1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. § 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206; 20 C.F.R. § 416.920(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. § 416.920(a)(4)(v).

**3.      Discussion:**

In her appeal brief, Plaintiff raises three arguments for reversal: 1) the ALJ erred in disregarding the opinions and findings of the primary treating physician, Dr. Justice; 2) the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective allegations of pain; and 3) the ALJ erred in finding the Plaintiff retained the RFC to perform a limited range of sedentary work. (ECF No. 11).

**A.      Credibility**

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 416.929.[3] *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *see Id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that Plaintiff's subjective complaints are not

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

entirely credible, the ALJ's credibility determination is entitled to deference. *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present case, the ALJ extensively discussed Plaintiff's credibility and provided numerous good reasons for discrediting same. First, the ALJ noted Plaintiff failed to follow recommended treatment. (ECF No. 10, pp. 22-23, 25); *see Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility"). For example, at her physical therapy initial evaluation on March 1, 2013, Plaintiff reported that although she had a knee brace, she declined to wear it because it was painful. (ECF No. 10, p. 353). On February 19, 2013, Dr. Sidani noted Plaintiff had previously been referred to physical therapy but did not attend. (ECF No. 10, p. 375). Although Dr. Sidani attributed Plaintiff's failure to attend physical therapy to Plaintiff's lack of insurance, the record is devoid of any indication Plaintiff was denied treatment due to lack of finances or attempted to receive and was subsequently denied any low cost or free healthcare services. *Id.*; *see Murphy v. Sullivan*, 953 F.2d

7

383, 386-87 (8th Cir. 1992); *see also Clark v. Shalala*, 28 F.3d 828, 831 n. 4 (8th Cir. 1994). Next, the ALJ noted Plaintiff's treatment for her knee impairment was typically conservative and involved medication, physical therapy, a knee brace, and injections of Kenalog and Lidocaine. (ECF No. 10, pp. 24, 429). *see Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain).

The ALJ also discussed Plaintiff's activities of daily living. (ECF No. 10, pp. 20-21, 25). The ALJ determined Plaintiff "is able to engage in significant physical activity when she desires. . . . [Plaintiff] is able to feed and dress herself and attend to personal hygiene. She can perform some household chores, prepare simple meals, go out alone, drive a car, shop in stores, and pay bills. [Plaintiff] resides with family members, goes out alone, drives a car, shops in stores, attends medical appointments, spends time with others, and maintains contact with others by way of telephone and Facebook." (ECF No. 10, p. 25). *see, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in pert because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends"). The ALJ also noted that Plaintiff complained of low back pain and neck pain after returning from vacation where she was "swimming a lot and of course sleeping in a different bed." (ECF No. 10, pp. 473). The ALJ determined, "[t]his behavior is indicative of her ability to engage in significant physical activity when she is so inclined. (ECF No. 10, p. 24).

8

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination. *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

B. **Medical Opinions**

The ALJ did not commit error by assigning Dr. Justice's opinion less than controlling, or even little, weight. Concerning the opinion of Dr. Armstrong, the ALJ wrote the following:

> An undated medical source statement by Larry Ramsay, P.A., countersigned by Dr. Justice shows [Plaintiff] as able to lift and carry up to ten pounds, but unable to sit, stand, or walk for more than one hour in an eight hour workday. There are no objective testing results provided to support the stringent limitations assessed. Although the assessment is not entirely inconsistent with a finding that [Plaintiff] can perform sedentary work as reflected in [the ALJ's RFC determination], the extreme limitations in [Plaintiff's] ability to sit, stand, or walk are simply inconsistent with other credible evidence of record including Dr. Justice's own treatment records. The assessment is weighed accordingly and given some weight to the extent it is consistent with the physical [RFC] assessment above.

(ECF No. 10, p. 25). Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 416.927(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. §

9

416.927(c)(2).

The ALJ was permitted to give Dr. Justice's physical RFC assessment less than controlling weight because it was inconsistent with Dr. Justice's own treatment notes.[4] The clear inconsistency between Dr. Armstrong's opinion and his own treatment records of Plaintiff is alone sufficient to discount Dr. Armstrong's opinion. *see Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) ("While the ALJ also found Dr. Prihoda's opinion to be internally inconsistent, we need not comment on that, as an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion").

The ALJ's RFC determination must be based on *all* relevant evidence in the record, not simply one consulting physician's opinion, despite the weight the ALJ affords the opinion. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). I note that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many treating physicians and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); *Prosch v. Apfel*, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the foregoing, I find the ALJ did not commit error by giving Dr. Justice's opinion less than controlling weight.

---

[4] I note that Dr. Justice's treatment notes were often prepared and signed by Mr. Larry Ramsay, a physician's assistant, who also appears to have prepared and signed Dr. Justice's Medical Source Statement. Nevertheless, the ALJ did not entirely discount Dr. Justice's opinion and gave it some weight.

C. **RFC**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.9545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff argues generally that she is unable to perform a limited range of sedentary work, but does not direct this Court to any specific evidence she suffered any greater degree of limitation than that contained in the ALJ's RFC determination. Plaintiff visited Dr. Justice and complained of left knee pain on February 19, 2013, approximately two and a half months after her alleged onset date. (ECF No. 10, pp. 299-300). Dr. Justice recommended conservative treatment including nonsteroidal anti-inflammatory drugs and a corticosteroid injection. *Id.* Moreover, Dr. Justice enrolled Plaintiff in a physical therapy program instead of limiting Plaintiff's activities. *Id.*; At the time of her alleged onset date, Plaintiff was suffering palpitations, chest pain, and shortness of breath, which was treated by Dr. Mears on December 19, 2012, with Lopressor. (ECF No. 10, p. 374). Dr. Mears adjusted

Plaintiff's medication on July 1, 2013, because her heart medication was wearing off mid-day. (ECF No. 11, p. 409). Dr. Green examined Plaintiff on June 12, 2014, when Plaintiff complained of back pain. (ECF No. 10, p. 430-32). He observed Plaintiff ambulated within normal limits, that her heart rate and rhythm were normal and noted Plaintiff was suffering moderate pain, numbness, and tingling in her lumbar spine, moderate pain in her thoracic spine, and moderate bilateral pain with swelling in her knees. (ECF No. 10, pp. 431-32). Dr. Green examined Plaintiff again on June 26, 2014, after Plaintiff complained of more knee pain. (ECF No. 10, pp. 427-29). Dr. Green noted Plaintiff's heart rate and rhythm were normal and Plaintiff was experiencing moderate bilateral knee pain and lumbar pain. (ECF No. 10, p. 429). Dr. Green interpreted an MRI of Plaintiff's knee and noted fluid in the lateral compartment and loss of joint space and articular cartilage damage in the medial compartment. (ECF No. 10, p. 429). Dr. Green diagnosed Plaintiff with osteoarthritis and effusion of the left knee, and performed conservative treatment which consisted of an injection of Kenalog and Lidocaine. (ECF No. 10, p. 429). Plaintiff returned to Dr. Green on July 31, 2014, and reported the previous injection in her left knee was helpful and sought an injection in her right knee and her back. (ECF No. 10, pp. 480-82). Dr. Green injected Plaintiff with Kenalog and Lidocaine in a portion of her back and in the right knee. (ECF No. 10, p. 482). While the record as a whole clearly supports that Plaintiff suffered with some degree of pain and limitation, substantial evidence supports the ALJ's determination Plaintiff retained the physical RFC to perform a limited range of sedentary work.

Plaintiff specifically argues the ALJ failed to consider Plaintiff's mental impairments in combination with her physical impairments. The ALJ specifically considered Plaintiff's impairments in combination where the ALJ determined Plaintiff's combination of impairments did not meet or

medically equal the severity of one of the impairments in the Listings and when the ALJ made his RFC determination, "after careful consideration of the entire record." *see* Hajek v. *Shalala,* 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered combined effects of a claimant's impairments where ALJ determined the claimant did not have an impairment or combination of impairments that rendered him disabled as defined by the Act); *see also Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1993) (ALJ properly considered combined effects of a claimant's impairments where ALJ separately discussed claimant's physical impairments, mental impairments, complaints of pain, and daily activities). I note that in formulating Plaintiff's RFC, the ALJ fully summarized all of Plaintiff's medical records and separately discussed each of her alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of her alleged impairments, I conclude that the ALJ properly considered the combined effects of Plaintiff's impairments, even those which the ALJ determined were non-severe. *see Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011).

Based on the foregoing, I find substantial evidence in the record as a whole supports the ALJ's RFC determination.

4. **Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 21st day of April 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE